IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTOPHER DOUGAN,

    Petitioner,

v.                                                         CASE NO. 1:09-cv-173-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. 1. The Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. Docs. 21, 23. Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State-Court Proceedings

The instant Petition stems from violation of probation (VOP) proceedings in Alachua County. Petitioner was serving concurrent four-year sentences of probation for three guilty-plea convictions of grand theft auto in Case Nos. 01-2006-CF-1366-A, 01-2006-CF-1927-A, and 01-2006-CF-2056-A.[2] The judgments were imposed on May 8, 2006. *See* App. Exh. A-4, B-4, C-4. On June 1, 2006, Petitioner was charged with

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] Petitioner also pleaded guilty to misdemeanor reckless driving and driving without a valid license in Case No. 01-2006-CF-1366-A.

violating probation by committing a new criminal offense of grand theft auto on May 18, 2006.  App. Exh. A-5, B-5, C-5.  The violation report charged that Petitioner stole Gloria Wessels' car keys from the classroom where she was teacher, then stole Wessels' car.  Wessels' cell phone was in the car.  The report alleged that Petitioner's fingerprints were found inside the car.  *Id*.

Petitioner was charged with new criminal offenses of burglary of a structure and grand theft auto.  He pleaded not guilty to the new charges and to the VOP and proceeded to trial.  The trial evidence may be summarized as follows.  Ms. Wessels testified that she was listening to a Phil Collins CD on her way to school the day of the theft.  When she arrived at school she locked the car and placed her keys in a closet in her classroom.  Before school was over, Wessels needed to get something from her car but could not find her keys.  She then discovered that her car was missing.  Her car was recovered later on the same day.  Her son subsequently found the CD under the driver's seat; it was turned over to GPD Detective Ferrara.  Petitioner's fingerprints were identified on the CD.  No other fingerprints were identified from the vehicle.  At the close of the State's case-in-chief, Petitioner's counsel moved for a judgment of acquittal.  The trial court found that the evidence was insufficient for a reasonable jury to conclude that Petitioner was guilty beyond a reasonable doubt of the charged offenses, granted the motion, and released the jurors.  App. Exh. D at 51.

The trial court then proceeded to consider additional evidence relative to the VOP charge.  Ms. Wessels took the stand again.  She testified that following the theft she obtained a new cell phone with the same number.  There were voicemail messages from two women wanting to know who Wessels was and what her relationship was with

"Chris." In another message, the caller wanted to know if the car that Chris was driving was Wessels' car, and the caller described the car. *Id*. at 54-55.

The following day Wessels received a call from someone who asked if she knew "Chris." Wessels responded "no," and the caller said "[y]ou don't know Christopher Lamont Dougan," and Wessels again responded "no." The caller asked if Wessels owned a gray silver Honda Accord with tinted windows. When Wessels responded "yes," the caller asked her if that was "your car that he was in when he came to my home." Wessels responded that she would have to get back to the caller later. *Id*.

Detective Ferrara testified that he made a recording of the voicemail messages. He attempted to contact the callers, but the first caller hung up on him and there was no answer at the second number. Petitioner's probation officer, Renardo Anthony Cabreara, confirmed that Petitioner was on probation at the time the new charge arose. *Id*.

At the conclusion of the additional evidence, the trial court stated:

> Needless to say, the standard of proof that is applied in a [VOP] hearing is completely different than what has to be applied in a criminal charge. The standard of proof in this case is the conscience of the Court, and as is probably abundantly clear, the Court's conscience is completely clear in finding Mr. Dougan in violation of his probation.

*Id*. at 65.

The court found that Petitioner violated his probation in each of the three underlying cases, revoked probation, and sentenced Petitioner to consecutive five-year prison terms in two cases and to a consecutive five-year term of probation in the third case. *Id*. at 74-77.

Petitioner pursued consolidated appeals arguing, *inter alia*, that the evidence was

insufficient to find that he committed the violation.  App. Exh. F.  The First DCA affirmed *per curiam* without opinion.  App. Exh. I.  Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 asserting three claims of ineffective assistance of counsel: (1) Counsel failed to object to the revocation of probation based solely on hearsay evidence; (2) Counsel failed to argue that the State failed to prove a violation by a preponderance of the evidence; and (3) Counsel conceded guilt by acknowledging during sentencing that there was evidence Petitioner was in possession of Wessels' vehicle.  App. Exh. J.  The postconviction court denied relief, and the First DCA affirmed *per curiam* without written opinion.  App. Exh. K, M.

The instant Petition followed.  Petitioner asserts two claims of ineffective assistance of counsel.  Doc. 1.  Respondent concedes that the Petition is timely, but opposes the Petition on the merits and on procedural grounds.  Doc. 21.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

     The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require

citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not

"evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

## Ineffective Assistance of Counsel

Because Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute

rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme

Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

*Claim 1: Ineffective assistance regarding hearsay*

Petitioner contends that the only evidence of his guilt presented at the VOP hearing was Wessels' and Ferrara's hearsay testimony regarding the voicemail messages. Petitioner contends that it was only this hearsay evidence that formed the basis for the trial court's decision that he violated probation. He argues that his trial counsel should have objected to such hearsay testimony. Doc. 1 at 5-7.

In rejecting this claim on postconviction review, the state court noted that the evidence included the direct evidence of Petitioner's fingerprints on Wessels' CD in addition to the hearsay evidence regarding the voicemail messages. App. Exh. K. The state court determined that to the extent Petitioner sought to relitigate the sufficiency of the evidence, such claim was not cognizable on postconviction collateral review. *Id*. The undersigned agrees that Petitioner's ineffective-assistance argument misconstrues the record; it is obvious that the trial court relied on the direct physical fingerprint evidence as well as the hearsay evidence.

Moreover, as the state court noted, hearsay is admissible in probation revocation hearings, although it cannot be the *sole* basis upon which a revocation of probation may be based. *See Russell v. State*, 982 So.2d 642, 646 (Fla. 2008) (citing *Cuciak v. State*, 410 So.2d 916, 918 (Fla.1982)), *cert. denied*, 129 S.Ct. 272 (2008). Because hearsay was admissible, the state court concluded that counsel did not err by failing to object to it. Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

*Claim Two: Ineffective assistance regarding sufficiency of the evidence*

Petitioner contends that no direct or circumstantial evidence tied him to the taking

of Wessels' car from the school parking lot.  He argues that the State did not prove by a preponderance of the evidence that Petitioner committed the new law violation.  He contends that his counsel performed deficiently by failing to argue that the evidence was insufficient.  Doc. 1 at 7-9.

In rejecting this claim on postconviction review, the state court concluded that it was essentially an attack on the sufficiency of the evidence that was foreclosed from collateral review, and did not address Petitioner's ineffective-assistance claim.  App. Exh. K.  Respondent contends that the state court rejected Petitioner's ineffective-assistance claim as procedurally barred on adequate and independent state grounds, and therefore that the claim is foreclosed from federal review.  Doc. 21.

The undersigned disagrees that this ineffective-assistance claim is foreclosed from federal review.  The state court rejected the claim as one challenging the sufficiency of the evidence that could not be raised on collateral review, but it is clear that Petitioner also presented the claim as one of ineffective assistance, notwithstanding the state court's failure to address it.  *See* App. Exh. J.  The Court therefore finds that the claim is exhausted.

Petitioner has failed to show, however, that this claim warrants federal habeas relief.  The trial record reflects that counsel vigorously challenged the sufficiency of the evidence to find Petitioner guilty of a criminal offense, and indeed succeeded in winning an acquittal.  During the VOP phase of the hearing that immediately followed acquittal, counsel did not renew an evidence-sufficiency objection, but it is apparent from the record that such an objection at that stage would have been futile.  The trial court determined that it was "abundantly clear" that the evidence supported a finding of a

probation violation, and "the [c]ourt's conscience is completely clear in finding" a violation. App. Exh. D. at 65. In Florida, a "trial court has the inherent power to revoke probation for misconduct which demonstrates the probationer's unfitness for probation." *Washington v. State*, 579 So. 2d 400, 401 (Fla. 5th DCA 1991). The evidence presented need only be sufficient to satisfy the conscience of the court as to whether the condition of probation was violated. *Adams v. State*, 559 So. 2d 436, 438 (Fla. 1st DCA 1990). The State must establish by a preponderance of the evidence that the probationer wilfully violated the terms of probation. *Smith v. State*, 711 So. 2d 100 (Fla. 1st DCA 1998). Thus, even if counsel arguably erred in failing to renew a sufficiency-of-the-evidence objection, on this record it is clear that Petitioner suffered no prejudice from the error because the trial court plainly would have overruled the objection. Petitioner has failed to show that his counsel rendered ineffective assistance under *Strickland*.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Case No: 1:09-cv-173-MP-GRJ

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 15th day of August 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.